IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY MARCHIOLI ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 5:11-CV-124 |
| v. ) | (LEK/GHL) |
| ) | |
| THE GARLAND COMPANY, INC.; ) | COMPLA I NT |
| ) | |
| Defendant. ) | JURY TRIAL DEMAND |
| _____ ) | |

NATURE OF THE ACTION

This is an action under the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(K); Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to correct unlawful employment practices on the basis of pregnancy, and to correct unlawful employment practices on the basis of a hostile work environment; and to provide appropriate relief to an employee who was adversely affected by such practices.  As alleged with greater particularity herein-below, Plaintiff alleges that Defendant The Garland Company, Inc. discriminated against Anthony Marchioli, when it terminated his employment due to the pregnancy insofar as he was terminated shortly after notifying Defendant Employer that he was expecting a child, and insofar as Defendant Employer repeatedly expressed in writing its disapproval of said pregnancy/disability to Plaintiff. Independent of, and notwithstanding the unlawful discrimination committed by Defendant herein, Plaintiff has also endured a hostile work environment for which he demands appropriate relief.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(K); the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of New York.

PARTIES

3. Plaintiff, Anthony Marchioli ("Plaintiff"), is an individual a resident of Erie County, New York, is a former employee of Defendant The Garland Company, Inc.

4. At all relevant times, Defendant, The Garland Company, Inc. (the "Employer"), has continuously been an Ohio Corporation doing business in the State of New York as an active Foreign Business Corporation, within the jurisdiction of the Federal Court, Northern District, New York and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h), and within the meaning of the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(K).

6.      At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.   More than thirty days prior to the institution of this lawsuit, Anthony Marchioli filed a charge with the Commission alleging pregnancy and disability discrimination by Defendant Employer.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8.   Since at least November 2, 2009, Defendant Employer has engaged in unlawful employment practices at its Gary, Indiana facility, in violation of Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(K), Section 102 of Title I of the ADA, 42 U.S.C. § 12112.

9.      The practices include terminating Plaintiff, a relatively high performing employee from his position with Defendant Employer due to prospective childbirth and pregnancy of his partner insofar as he was terminated under circumstances giving rise to a <u>strong</u> inference that said termination was a result of his partner's pregnancy, and that Plaintiff was an expectant father who was likely to have parental responsibilities in Erie County, New York.

10.     The effect of the practices complained of in paragraph 9 above has been to deprive Anthony Marchioli of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability.

11.     The unlawful employment practices complained of in paragraph 8 above were intentional.

## FACTUAL ALLEGATIONS:

12.     Plaintiff Marchioli, was discriminated against by Defendant Employer, based on pregnancy and disability.

13. The following account describes how he was treated unfairly once his employer found out Plaintiff Anthony Marchioli was an expecting father.

14. At or before trial, it will be proven that Defendant Employer 's presumptions regarding prospective parental responsibilities of a male starting a family, and concomitantly, that as a father, Mr. Marchioli would be unable to adequately perform his job, lead to his termination.

15. Plaintiff Anthony Marchioli was summarily fired due to his partner Jillian's pregnancy and due to the anticipated "distraction" that said pregnancy would cause to Plaintiff's work, notwithstanding the fact that Plaintiff was a relatively and comparatively high performing employee of Defendant Employer.

16. In June of 2009 Plaintiff was a sales representative for the medical device company COVIDIEN, and was considered "top talent" in a division that routinely remunerates employees $120,000 annually at plan.

17. Plaintiff had not planned on resigning his position with Covidien until he was recruited by The Garland Company in or about the summer of 2009, at which time he was told how the average Garland representative earned $283,000 per annum.

18. Plaintiff Marchioli interviewed with several Garland employees, including sales manager Joe Phillips, recruiter/mentor Karl Sooy and veteran sales rep Brian Moore. During the interview Plaintiff Marchioli was asked many questions that he was not comfortable answering but did out of fear that if he refused it would hinder his chances of being hired.

19. The following are paraphrased questions asked by Defendant Employer, by and through authorized agents, which Plaintiff Marchioli vividly recalls:
"How old are you?"

"Are you married?"

"How long have you been with your girlfriend?"

"Are you going to pop the question?"

"Are you going to have children?"

"Tell me about your relationship with your mother."

"Marchioli, are you a Daigo?"  (A derogatory word for Italians)

20. Plaintiff Marchioli overlooked a questionable interview process in light of the very lucrative potential, and accepted Defendant Empoyer's offer.  Plaintiff left Covidien, and started training in July of 2009.

21. On or about 1 August 2009, when the three-week training session was complete, Jillian Cavanaugh (Plaintiff Marchioli's girlfriend of 5+ years and future mother of his child) and Plaintiff Marchioli moved to Liverpool New York to be closer to his sales territory which spanned from Watertown to Utica/Rome and further southeast.

22. During Plaintiff's first 6 weeks of hire he was left in the care of his trainer Josh Pocracki, a Rochester-based representative, who was to answer any questions Plaintiff Marchioli might have and to help him to learn the business.

23. Plaintiff Marchioli's first "ride day", wherein the Sales Manager spends a day with a sales representative to help evaluate performance, was with Joe Phillips on September 17th 2009.

24. By this time Plaintiff. Marchioli had very quickly learned his business and had developed strong customer relationships.  Joe Phillips said things like, "It is amazing that 6 weeks in, you sound like a 3 year veteran!" (Paraphrased).

25. More formally, Joe Phillips wrote Plaintiff's Marchioli's evaluation which

5

included the following comments:

"It was good to get in the first of what I feel will more than likely be many more ride days to come."

"I thought we had a good first day. Your day was well planned out and hardly a minute was wasted."

"Our last stop of the day was to the Town of Sherril where in just a few weeks out in the field you have already established a strong relationship. So much so that you just got the go ahead to bid out your first project! That's an awesome accomplishment for a guy just six weeks out of training class and tells me, 'you get it'. You did something to develop trust and were rewarded by getting your first project. Congratulations on a job well done."

"Overall Anthony I was very impressed with your day."

"You made a great decision to start a career with Garland that can span three decades and help you realize all your life's goals. Make the total commitment to doing all the things you need to do to be successful and you'll never regret it."

26. At the end of the aforementioned "ride day", Plaintiff Marchioli and Mr. Phillips scheduled the following "ride day for October 8th and 9th, roughly 3 weeks later.

27. Over the weekend of October 4, 2009, Mr. Marchioli found out that his and Ms. Cavanaugh's efforts were successful, and they were going to have a baby. Mr. Marchioli was excited to tell anyone who would listen and since he felt he had proven himself to his manager, Joe Phillips, he shared the news with him when they spoke on Monday, October $5^{th, 2009}$.

28. Mr. Phillips called to tell Plaintiff Marchioli that he would have to cut their Friday "ride-day" short because he had another appointment. Plaintiff Marchioli relayed the news of the pregnancy and asked for and received permission to assist Jillian's in finding a doctor in

Buffalo, New York, Jillian's hometown.

29. Plaintiff accompanied Ms. Cavanaugh to find a Doctor in the Buffalo area that Friday afternoon.

30. Immediately after relaying the news of the pregnancy, Defendant Employer's evaluations of Plaintiff Marchioli, and Defendant's treatment of Plaintiff generally, became worse.

31. Suddenly nothing Mr. Marchioli did was right. Mr. Phillips found "fault" with Plaintiff's sales calls, his methods of dealing with customers, and even went so far as to blame Plaintiff Marchioli for working a half day on a previous Friday, when it was Mr. Phillips who had authorized a half-day due to a separate appointment.

32. After learning of the pregnancy, Mr. Phillips' evaluation of Plaintiff unjustifiably poor insofar as Plaintiff's performance was consistently above average, and had not suffered as a result of the pregnancy. For example, Mr. Phillips's said of Plaintiff:

> "Now for the tough part. All this follow will not matter to you because you might not have your opportunity with Garland much longer. You read that right! If I did not think you were an exceptional talent, I'd probably be releasing you tomorrow. There are many different personalities that come into Garland and make a career of it and many more who never do. You are very smart, which makes you a quick learner. You also have great people skills. You have an ability to quickly gain confidence from the prospects you get in front of. That is something that cannot be taught. The problem is, you are going about developing your business in a halfhearted manner. You're wasting your talents…"

33. This seemed such a far stretch from the previous evaluation where Plaintiff

Marchioli was clearly ahead of the curve.

34.     Plaintiff Marchioli failed to understand how his performance evaluation had changed so drastically since telling his Employer about his and Ms. Cavanugh's pregnancy news, until he read the last paragraph of his evaluation which read:

"Lastly, I'm not here to tell you how to live your life <u>but the situation with your girlfriend spells big trouble to me</u>. The <u>***distractions***</u> you are going to have <u>***over the next 10 months***</u> are going to be too much if you're <u>***constantly being pulled back to Buffalo***</u>. It's already started.  I set aside October 8th and 9th for you and let you know last month we would be working together. <u>***You guys had to make a Dr's appointment in Buffalo***</u> on Friday afternoon so you let me know you'd have to leave by lunch time!   You need to decide if you want to totally commit yourself to this endeavor.  If you don't want to "buy in" and put a maximum effort into developing your career, <u>***do me and Josh a favor and quit now***</u>. <u>***Don't waste our time or yours***</u>.  I always give guys who maybe do not have tons of talent the benefit of a doubt because they always work hard to overcome that lack of talent.   You have lots of talent but based on what I see so far, you do the bare minimum.   If you do not meet first quarter objectives of 10 accounts and 15 orders, <u>***your employment with Garland will be immediately terminated***</u>.  I'm not going to tolerate working with a guy who does not give it his all.  The party is over Anthony.  You need to decide what you want to do.  I intend to monitor very closely your progress from here on out. <u>***If you do not want to work under that kind of scrutiny, leave now.***</u>" (Emphasis added).

35.     The foregoing admonitions are not just circumstantial, but constitute direct

evidence of unlawful discrimination and are tantamount of a hostile work environment insofar as the harassment and admonishments are outrageous, pervasive and based upon completely lawful and protected conduct on the part of Plaintiff.

36. Mr. Phillips' next correspondence with Plaintiff Marchioli came a few days later and was again was very discouraging. It read, I pertinent part:

"***Between you and me, the whole Buffalo thing is a huge concern for me***.  You may not think so but I've seen this tune sung before many times.  You are going to have to show you mean what you say and make things happen.  Accounts and orders are going to be closely monitored.  If you fall behind you will be terminated.  Mt experience tells me it's highly unlikely you are going to make it.  You will have to prove me wrong.  I'll call you toward the end of the week to see how the week went." (Emphasis added).

37. Plaintiff Marchioli told Mr. Phillips that he and Ms. Cavanaugh decided to get a Doctor in Liverpool so there would be little distraction and asked Mr. Phillips what "the whole Buffalo thing" meant.  Mr. Phillips never replied.

38. Plaintiff Marchioli took it upon himself to prove Mr. Phillips wrong and did so by outperforming his colleagues so that by the end of October, 2009, Plaintiff Marchioli was one of only two people in his training class to obtain 100% of their quota.  Plaintiff Marchioli was finally starting to feel secure in his position again.

39. Notwithstanding his high quality performance, on November 2nd and 3rd ride-days with Mr. Phillips were very uncomfortable for Plaintiff. Mr. Phillips told Plaintiff Marchioli, "I just don't see how this will work out for you," and "I can't put my finger on it but I just think maybe this isn't the right fit…" (Paraphrased).  Similar comments and no respect for Plaintiff Marchioli's accomplishments left him feeling very discouraged.

9

40. On the evening of Monday November 16th, Mr. Phillips relayed to Plaintiff Marchioli that he: "…just don't see this working out…" for Plaintiff, ad proceeded to terminate his employment. No further reason for the termination was given.

41. Since his termination, Mr. Marchioli and Ms. Cavanaugh moved back to the Buffalo, New York area and despite having sought employment, Plaintiff remains unemployed and he has exhausted his savings.

42. Plaintiff Marchioli has spoken with many job recruiters since his unlawful termination and repeatedly elicits the same response… that since he was only employed with Garland for a few months, he appeared to be a "job hopper", and that as a result it will be very difficult to become re-employed in the field.

43. The unlawful employment practices, including discrimination and hostile work environment complained of herein-above, were intentional.

44. The unlawful employment practices complained of herein-above were done with malice or with reckless indifference to the federally protected rights of Anthony Marchioli.

45. The present Complaint shall have been filed in the Northern District Court, New York, fewer than 90 days after receiving the Right To Sue letter from the Equal Employment Opportunity Commission.

PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from terminating qualified individuals with due to pregnancy.

  B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for expectant parents, and which eradicate the effects of its past and present unlawful employment practices and hostile work environment.

  C. Order Defendant Employer to make whole Anthony Marchioli by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including hostile work environment.

  D. Order Defendant Employer to make whole Anthony Marchioli by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, including job search expenses, relocation expenses, and medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

  E. Order Defendant Employer to make whole Anthony Marchioli by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including discrimination and hostile work environment complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  F. Order Defendant Employer to pay Anthony Marchioli individual punitive damages for its malicious and reckless conduct, as described herein-above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

                                      Respectfully Submitted,

                                      S:/ James D. Hartt
                                      **JAMES D. HARTT, ESQ.,  Bar #516129**
                                      **Attorney For Plaintiff**
                                      **70 Linden Oaks, Third Floor**
                                      **Rochester, NY 14625**
                                      **Telephone: (585) 490-7100**
                                      **Fax: (585) 425-0579**

```
ORIGINAL of the foregoing was
filed this with:
The Clerk of the Federal District Court
Northern District, New York
```