James D. Hartt, Esq.

**James D. Hartt, Esq., Attorney At Law**
70 Linden Oaks, Third Floor
Rochester, NY 14625
TELEPHONE: (716) 400-3260

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY MARCHIOLI,<br><br>Plaintiff,<br><br>vs.<br><br>THE GARLAND COMPANY, INC.<br><br>Defendant | Civil Action No.: 5:11-CV-0124 LEK/GHL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiff re-alleges the facts contained in the complaint as though fully incorporated herein. Plaintiff does hereby respond to Defendant's Motion to Dismiss as follows:

**Standard of Review:**

In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). In deciding such a motion, the court may take into account documents referenced in the complaint, as well as documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in filing the suit. See Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). The complaint may be dismissed only if "it

appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587, 104 S. Ct. 1989, 80 L. Ed. 2d 590 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)

**Point I: Plaintiff has sufficiently pled a case under The PDA and Title VII:**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII applies to men as much as it does to women. See *United States* v. *Turkette*, 452 U.S. 576, 591 (1981). Cf. *McDonald* v. *Santa Fe Trail Transp. Co*., 427 U.S. 273, 285-296 (1976). Title VII was amended by the PDA to enact Congress's determination that "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684, 103 S. Ct. 2622, 77 L. Ed. 2d 89 (1983). Thus the PDA further provides that the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k) (emphasis supplied).

The question of whether males should be covered under Title VII and the PDA, was addressed in 1983 by the United States Supreme Court, which stated: "Section 703(a) makes it an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin. . . ." 42 U. S. C. § 2000e-2(a)(1). Health insurance and other fringe benefits are "compensation, terms, conditions, or privileges of employment." Male as well as female employees are protected against discrimination. Thus, if a private employer were to provide complete health insurance coverage for the dependents of its female employees, and no coverage at all for the dependents of its male employees, it would violate Title VII. Such a practice would not pass the simple test of Title VII discrimination that we enunciated in Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 711 (1978), for it would treat a male employee with dependents "'in a manner which but for that person's sex would be different.'" The same result would be reached even if the magnitude of the discrimination were smaller. For example, a plan that provided complete hospitalization coverage for the spouses of female employees but did not cover spouses of male employees when they had broken bones would violate Title VII by discriminating against male employees." Newport News Shipbuilding & Dry Dock Co. v. Eeoc, 462 U.S. 669, 682-683 (U.S. 1983).

The court also provided: Although the Pregnancy Discrimination Act of 1978 (42 USCS 2000e(k)) makes clear that the language of 703(a)(1) of Title VII of the Civil Rights Act of 1964 (42 USCS 2000e-2(a)(1)) should be construed to prohibit discrimination against a female employee on the basis of her own pregnancy, it did not remove or limit Title VII's prohibition of discrimination on the basis of the sex of the employee, whether male or female, which was already present in the Act. Id.

The Supreme Court in Newport News also provided of the legislative intent with respect to Title VII and the PDA, in pertinent part:"…congressional discussion focused on the needs of female members of the work force rather than spouses of male employees. This does not create a "negative inference" limiting the scope of the Act to the specific problem that motivated its enactment. See United States v. Turkette, 452 U.S. 576, 591 (1981). Cf. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 285-296 (1976). Congress apparently assumed that existing plans that included benefits for dependents typically provided no less pregnancy-related

1  coverage for the wives of male employees than they did for female employees. When the
2  question of differential coverage for dependents was addressed in the Senate Report, the
3  Committee indicated that it should be resolved "on the basis of existing title VII principles." The
4  legislative context makes it clear that Congress was not thereby referring to the view of Title VII
5  reflected in this Court's *Gilbert* opinion. Proponents of the legislation stressed throughout the
6  debates that Congress had always intended to protect *all* individuals from sex discrimination in
7  employment -- including but not limited to pregnant women workers.

8  Clearly, then, notwithstanding the focus of the PDA upon its protection of females, Title
9  VII and the PDA applies as much to Plaintiff as it applies to females. Essentially, the Supreme
10  Court in Newport News held that Although the Pregnancy Discrimination Act of 1978 (42 USCS
11  2000e(k)) makes clear that the language of 703(a)(1) of Title VII of the Civil Rights Act of 1964
12  (42 USCS 2000e-2(a)(1)) (aka "PDA") should be construed to prohibit discrimination against a
13  female employee on the basis of her own pregnancy, it did not remove or limit Title VII's
14  prohibition of discrimination on the basis of the sex of the employee, whether male or female,
15  which was already present in the Act. Therefore, Plaintiff's action has been properly pled to
16  implicate both Title VII generally, as well as the PDA.

17  While it is true that the present issue appears to be a case of first impression for the
18  second circuit, and the Northern District of New York, New York state precedent is replete with
19  authority that provides protection for parties that have suffered from discrimination in a manner
20  analogous to that of Plaintiff in the instant matter.

21  Several cases have allowed claims by persons who were not themselves members of the
22  protected class but who were personally affected, albeit indirectly, by virtue of the alleged
23  discrimination. In *Bernstein v 1995 Assocs.* (185 AD2d 160 [1st Dept 1992]), the Court
24  sustained a complaint by a physician who alleged that a landlord refused to renew his office lease
25  because, among other things, one of his subtenants was treating AIDS patients.

26

In *Dunn v Fishbein* (123 AD2d 659 [2d Dept 1986]), the Court permitted a Caucasian person to maintain a claim that he was denied an apartment because his roommate was African-American.

Axelrod v. 400 Owners Corp., 189 Misc. 2d 461 (N.Y. Sup. Ct. 2001) involved a shareholder in a New York City apartment cooperative who presented several proposed purchasers for board approval. A sale was delayed for 18 months by the failure to approve several proposed purchasers, and the shareholder claimed that the failure to approve was motivated solely by the fear of the chairman of the board that the proposed purchasers might have children and the other board members' accommodation of his fear. The court held that the shareholder stated possible claims for breach of fiduciary duty and for housing discrimination based on familial status in violation of N.Y. Exec. Law § 296(5) and New York City, N.Y., Admin. Code § 8-107(5), even though the shareholder was not a member of the protected class that the alleged discrimination targeted.

New York State Law:  While it is true that there do not appear to be any New York cases dealing precisely with the circumstances of the case at bar (i.e. a male alleging discrimination on the basis of pregnancy), the above case law provides some guidance on the issue of standing, and clearly demonstrates that Anthony Marchioli has standing to bring the instant action.  The evidence further shows that Mr. Marchioli was subject to adverse conditions of employment (i.e., terminated) as a result of pregnancy, and an apparent concern on the part of respondent that the pregnancy would occupy too much of his time to warrant a continuation of his employment. Pregnancy discrimination is outlawed in New York State.  In *Rainer N. Mitti, Opthalmologist, P.C. v New York State Div. of Human Rights* (100 NY2d 326, 794 N.E.2d 660, 763 N.Y.S.2d 518 [2003]), the Court of Appeals expressly held that the Human Rights Law "prohibits discharge of an employee because of pregnancy," and "[t]he standards for establishing unlawful discrimination" in this context "are the same as those governing title VII cases" (*see id*. at 330.) (*See also Matter of Board of Educ. v New York State Div. of Human Rights*, 56 NY2d 257, 261-

-5-

62, 436 N.E.2d 1301, 451 N.Y.S.2d 700 [1982]; *Matter of Diaz Chem. Corp. v New York State Div. of Human Rights*, 91 NY2d 932, 693 N.E.2d 744, 670 N.Y.S.2d 397 [1998], *aff'g* 237 AD2d 932, 654 N.Y.S.2d 907 [4th Dept 1997]; *Matter of Galante & Son v State Div. of Human Rights*, 52 NY2d 962, 419 N.E.2d 872, 437 N.Y.S.2d 969 [1981], *aff'g* 76 AD2d 1023, 429 N.Y.S.2d 480 [3d Dept 1980].)

**Point II:  Plaintiff has sufficiently pled a case of Hostile Work Environment:**

To establish a hostile work environment claim under Title VII, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

In the case at bar, Plaintiff has met the foregoing burden insofar as he pled facts which demonstrate a pervasive and severe form of harassment (See Complaint, ¶¶31, 32, 34, 35, 36, 39) and inasmuch as Plaintiff pled facts sufficient to show that the harassment should be imputed employer (See Complaint, ¶¶ 32, 34, 40).

While the standard for establishing a hostile work environment is high, 2nd Circuit courts have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' " (alteration and emphasis in the original).  Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000)).  "The environment need not be 'unendurable' or 'intolerable.'" *Id*. In brief, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id*. (quoting Whidbee, 223 F.3d at 70 (internal quotation marks omitted)).Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).  Notwithstanding that the working environment was rendered

intolerable and unendurable to Plaintiff ((See, for example, Complaint, ¶¶ 39), he has certainly pled sufficient facts to survive the above-enunciated test for hostile work environment.

**Point III: Plaintiff has properly pled disability discrimination based upon Defendant's Perceptions of Plaintiff's pregnancy-related Circumstances:**

Plaintiff may argue that although he was not in fact substantially impaired, he and his girlfriend were regarded by Defendants as suffering from a disability. *See* 42 U.S.C. § 12102(2)(C) (1995). This more subjective definition of disability is available to a plaintiff who suffers employment discrimination not on the basis of an actual disability but on the basis of myths, fears, and stereotypes that lead his or her employer to the erroneous conclusion that he or she is substantially impaired. *Greenberg v. New York State*, 919 F. Supp. 637, 641 (E.D.N.Y. 1996) (citing *Cook v. Rhode Island Dep't of Mental Health, Retardation & Hosps.*, 10 F.3d 17, 23 (1st Cir. 1993) and 29 C.F.R. § 1630, app.) ("Thus, if an individual can show that an employer . . . made an employment decision because of a perception of disability based on myth, fear or stereotype, the individual will satisfy the "regarded as" part of the definition of disability.'"). Plaintiff's complaint therefore might alternatively be construed to make out a claim under the more subjective prong of the disability definition.

The Complaint, and paragraphs 32, 34 and 36 demonstrate the defendant's preconceived notions of pregnancy. The expected consequences the pregnancy would pose to the defendant's business. Thus, even though Plaintiff Marchioli and his partner were not disabled in the traditional sense, he is protected by the ADA because of the foregoing exception. As such, Plaintiff has adequately pled a case of disability discrimination under the ADA.

**Conclusion:**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety, with costs and attorney's fees awarded to plaintiff.

1   DATED this 3rd day of May, 2011.

                                                        **JAMES D. HARTT, ESQ.,**
                                                        **Attorney At Law**

                                                    By: S// James D. Hartt
                                                          James D. Hartt, Esq.
                                                          70 Linden Oaks, Third Floor
                                                          Rochester, NY 14625