UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY MARCHIOLI,

                                  **Plaintiff,**

   vs.                                                       5:11-cv-124
                                                                     (MAD/ATB)

GARLAND COMPANY, INC.,

                                  **Defendants.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**OFFICE OF JAMES D. HARTT**         **JAMES D. HARTT, ESQ.**
70 Linden Oaks, Third Floor
Rochester, New York 14625
Attorneys for plaintiff

**ROSS, BRITTAIN & SCHONBERG**    **EVELYN P. SCHONBERG, ESQ.**
**CO., LPA**
6480 Rockside Woods Boulevard South
Suite 350
Cleveland, Ohio 44131
Attorneys for defendant

**BOND, SCHOENECK & KING, PLLC**  **NICHOLAS J. D'AMBROSIO, JR., ESQ.**
111 Washington Avenue
Albany, New York 12210-2280
Attorneys for defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff commenced this action on February 3, 2011, pursuant to the Pregnancy

Discrimination Act of 1978 ("PDA"), Title I of the Americans with Disabilities Act of 1990

("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Title I of the Civil Rights

Act of 1991, "to correct unlawful employment practices on the basis of disability and to correct unlawful employment practices on the basis of pregnancy, and to correct unlawful employment practices on the basis of a hostile work environment; and to provide appropriate relief to an employee who was adversely affected by such practices." *See* Dkt. No. 1 at 1.

Currently before the Court is defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

In July of 2009, plaintiff was hired by defendant as a sales representative and moved to Liverpool, New York in order to be closer to his sales territory that spanned from Watertown to Utica. *See* Dkt. No. 1 at ¶¶ 20-21. During his first six weeks on the job, plaintiff quickly learned the business and developed strong customer relationships and received very positive evaluations. *See id.* at ¶¶ 22-26.

Over the weekend of October 4, 2009, plaintiff discovered that his girlfriend was pregnant and informed his manager the next day. *See id.* at ¶ 27. That same day, plaintiff asked for and received permission to assist his girlfriend in finding a doctor in her hometown of Buffalo, New York, on the following Friday afternoon. *See id.* at ¶ 28. Immediately after relaying the news of the pregnancy, plaintiff alleges that defendant began to find fault with his performance and subjected him to a hostile work environment. *See id.* at ¶¶ 30-36, 39-40. In a negative evaluation following the news of plaintiff's girlfriend's pregnancy, plaintiff alleges that defendant's sales manager, Joe Phillips, wrote the following:

> "Lastly, I'm not here to tell you how to live your life but the situation with your girlfriend spells big trouble to me. The distractions you are going to have over the next 10 months are going

> to be too much if you're constantly being pulled back to Buffalo. It's already started. I set aside October 8th and 9th for you and let you know last month we would be working together. You guys had to make a Dr's appointment in Buffalo on Friday afternoon so you let me know you'd have to leave by lunch time! You need to decide if you want to totally commit yourself to this endeavor. If you don't want to "buy in" and put a maximum effort into developing your career, do me and Josh a favor and quit now. Don't waste our time or yours. I always give guys who maybe do not have tons of talent the benefit of a doubt because they always work hard to overcome that lack of talent. You have lots of talent but based on what I see so far, you do the bare minimum. If you do not meet first quarter objectives of 10 accounts and 15 orders, your employment with Garland will be immediately terminated. I'm not going to tolerate working with a guy who does not give it his all. The party is over Anthony. You need to decide what you want to do. I intend to monitor very closely your progress from here on out. If you do not want to work under that kind of scrutiny, leave now."

*See id.* at ¶ 34 (emphasis omitted). Plaintiff claims that these negative evaluations continued, despite the fact that, by the end of October 2009, he "was one of only two people in his training class to obtain 100% of their [sales] quota." *See id.* at ¶ 38.

Finally, on November 16, 2009, through Mr. Phillips, defendant fired plaintiff. *See id.* at ¶ 40.

### III. DISCUSSION

**A.     Motion to dismiss standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

(citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

**B.     Plaintiff's Pregnancy Discrimination Act and Title VII discrimination claims**

Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting approach set forth in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). "In the context of an alleged discriminatory discharge, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id.* at 491-92 (citation omitted).

The Supreme Court has made clear, however, that *McDonnell–Douglas* sets forth "an evidentiary standard, not a pleading requirement," and that an "employment discrimination plaintiff need not plead a prima facie case of discrimination[.]" *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510, 515 (2002). Rather, as long as the complaint gives the defendant "fair notice of [the plaintiff's] claim and the grounds upon which it rests," and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," the complaint satisfies the strictures of Federal Rule of Civil Procedure 8(a). *Boykin v. KeyCorp*, 521 F.3d 202, 214–16 (2d Cir. 2008).

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII was amended by the PDA to enact Congress's determination that "discrimination based on a woman's pregnancy is, on its face,

discrimination because of her sex." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684 (1983). Thus, the PDA further provides that

> the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. § 2000e(k). As will be discussed, in order for plaintiff to prevail, he must allege and eventually prove that defendant's "discrimination" was "because of sex" or "on the basis of sex."

The Supreme Court clarified the scope of the PDA in *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187 (1991), when it held that the PDA prohibited a manufacturer of batteries from excluding fertile women from certain jobs involving lead exposure in order to protect the women's as yet unconceived offspring. *See id.* at 198-99. The manufacturer argued that its policy did not constitute sex-based gender discrimination because it classified the women based on their fertility, a gender-neutral condition. *See id.* at 197-98. The Supreme Court rejected this argument, however, holding that because the manufacturer did not seek to protect the unconceived children of all its employees, the policy "classifie[d] on the basis of gender and childbearing capacity, rather than fertility alone;" and, therefore, the manufacturer's practices constituted prohibited sexual discrimination under Title VII and the PDA. *Id.* at 198.

More recently, in *Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir. 2003), the Second Circuit held that an employer's denial of insurance coverage for surgical impregnation procedures performed for the treatment of infertility did not constitute unlawful sex-based discrimination under the PDA or Title VII. *See id.* at 346–47. The court distinguished between reproductive

6

capacity and pregnancy or related conditions.  *See id.* at 345.  The court reasoned that although surgical impregnation procedures for the treatment of fertility are performed only on women, "the need for the procedures may be traced to male, female, or couple infertility with equal frequency."  *Id.* at 347.  Therefore, the court held that "the exclusion of surgical impregnation procedures disadvantages infertile male and female employees equally" and that "infertility standing alone does not fall within the meaning of the phrase 'related medical conditions' under the PDA[.]"  *Id.* at 346.  The court expressly declined to consider, however, the question of "whether an infertile female employee would be able to state a claim under the PDA or Title VII for adverse employment action taken against her because she has taken numerous sick days in order to undergo surgical implantation procedures."  *Id.* at 346 n.4 (citations omitted).

The Seventh Circuit took up that question in *Hall v. Nalco Co.*, 534 F.3d 644 (7th Cir. 2008); it found that a female employee who claimed she had been fired for taking time off to undergo in vitro fertilization ("IVF") procedures stated a cognizable sex-discrimination claim under Title VII.  *See id.* at 649.  The *Hall* court reasoned that

> [e]mployees terminated for taking time off to undergo IVF—just like those terminated for taking time off to give birth or receive other pregnancy-related care—will always be women.  This is necessarily so; IVF is one of several assisted reproductive technologies that involves a surgical impregnation procedure.  Thus, . . . Hall was terminated not for the gender-neutral condition of infertility, but rather for the gender-specific quality of childbearing capacity.

*Id.* at 648–49 (internal citations omitted).

As defendant points out, only the Seventh Circuit seems to have dealt with a factual situation similar to that presently before the Court.  In *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838 (7th Cir. 2007), the plaintiffs, Charles Griffin and Julia Yarden, a couple employed by

the defendant, filed suit alleging that they were terminated because plaintiff Yarden had become pregnant.  *See id.* at 840.  Affirming the district court's grant of summary judgment on plaintiff Griffin's PDA claim, the Seventh Circuit noted that the PDA is "a statute that 'brought discrimination based on pregnancy within a *woman's* protections against sex discrimination.'" *Id.* at 842 (quotation and other citations omitted).  The court noted "that pregnancy discrimination is, by statutory definition, discrimination 'because of sex,' not sexual activity or reproductive capacity."  *Id.* (citing *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003); *Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340, 342 (8th Cir. 1997)).  Referring to *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 676 (1983), the court held that not "all claims relating to pregnancy must be brought by women, but male plaintiffs, like their female counterparts, must prove that they suffered adverse employment actions because of their sex."  *Id.* at 843.

Similarly, in *Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340 (8th Cir. 1997), the Eighth Circuit addressed "the narrow question of whether being discriminated against because of one's status as a new parent is 'because of or on the basis of pregnancy, childbirth, or related medical conditions,' . . . and therefore violative of the PDA."  *Id.* at 342 (internal quotation omitted).  Answering in the negative, the court held that

> we conclude that an individual's choice to care for a child is not a "medical condition" related to childbirth or pregnancy.  Rather, it is a social role chosen by all new parents who make the decision to raise a child.  While the class of new parents of course includes women who give birth to children, it also includes women who become mothers through adoption rather than childbirth and men who become fathers through either adoption or biology.  An employer's discrimination against an employee who has accepted this parental role-reprehensible as this discrimination might be-is therefore not based on the gender-specific biological functions of pregnancy and child-bearing, but rather is based on a gender-neutral status potentially possessible by all employees, including men and women who will never be pregnant.

*Id.* (citations omitted).

In the present matter, plaintiff alleges that defendant discriminated against him "when it terminated his employment due to the pregnancy insofar as he was terminated shortly after notifying [d]efendant . . . that he was expecting a child, and insofar as [d]efendant . . . repeatedly expressed in writing its disapproval of said pregnancy/disability to [him]." *See* Dkt. No. 1 at 1. Plaintiff further alleges that defendant's unlawful

> practices include terminating [p]laintiff . . . due to prospective childbirth and pregnancy of his partner insofar as he was terminated under circumstances giving rise to a <u>strong</u> inference that said termination was a result of his partner's pregnancy, and that [p]laintiff was an expectant father who was likely to have parental responsibilities in Erie County, New York.

*See id.* at 3.

Although plaintiff correctly alleges that Title VII protects both men and women from gender-based discrimination, plaintiff has not alleged that he was terminated because of such a discriminatory practice. Instead, plaintiff has alleged that he was terminated because of his gender-neutral classification as a parent or parent-to-be. *See Piantanida*, 116 F.3d at 342; *see also Griffin*, 489 F.3d at 843. Although such actions are clearly reprehensible, they simply do not fall within the prohibitions of either Title VII or the PDA.

As such, the Court grants defendant's motion to dismiss plaintiff's Title VII and PDA claims.

**C.     Plaintiff's Title VII hostile work environment claim**

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or

9

pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex,'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of another characteristic protected by Title VII, s*ee Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).  "[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his] sex."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

Plaintiff's complaint makes clear that his hostile work environment claim is based on the comments his supervisor made regarding his girlfriend's pregnancy and his doubt's about whether plaintiff will be too distracted to perform his job adequately.  First, plaintiff fails to allege conduct that was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile.  *See St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 234 (E.D.N.Y. 2010) (citing cases).  Second, plaintiff fails to allege that the alleged hostile work environment was created because of his sex.  Rather, all of the allegations in the complaint allege that he was harassed because of his girlfriend's pregnancy and the fact that he was soon to be a parent.  *See* Dkt. No. 1 at ¶¶ 32, 34-39.  Such allegations fail to state a plausible claim that the hostile work environment occurred "'because of the plaintiff's sex.'" *Patane*, 508 F.3d at 113 (quotation omitted).

As such, the Court grants defendant's motion to dismiss plaintiff's hostile work environment claim.

### D.     Plaintiff's ADA discrimination claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Plaintiff does not allege that he has a disability. Therefore, his claim must be based on his girlfriend's alleged disability, *i.e.*, her pregnancy. The associational provision of the ADA provides that the term "discriminate" as used in the statute includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association. . . ." 42 U.S.C. § 12112(b)(4). The interpretative guidance from the EEOC makes clear that the ADA only requires an employer to make a reasonable accommodation for an employee with a disability; they are not required to provide such accommodations to employees who have a relative with a disability. *See* 29 C.F.R. Pt. 1630 App. § 1630.8; *see also Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1082 (10th Cir. 1997).

Several other circuits have discussed what a plaintiff needs to establish to prevail under the associational provision of the ADA. For example, the Seventh Circuit provided three categories in which an employer has a motive to discriminate against a non-disabled employee because of that person's association with a disabled person. *See Larimer v. Int'l Business Machines Corp.*, 370 F.3d 698, 702 (7th Cir. 2004). The Seventh Circuit described these categories as (1) termination based on a disabled relative's perceived health care costs to the company; (2) termination based on fear of an employee contracting or spreading a relative's disease; and (3) termination because an employee is somewhat distracted by a relative's disability,

11

yet not so distracted that he requires accommodations to satisfactorily perform the functions of his job.  *See id.* at 700; *see also Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 n.7 (3d Cir. 2009) (citing *Larimer* with approval).

In the present matter, the only category that plaintiff's claim arguably encompasses is the third category.  Plaintiff, however, fails to allege that his girlfriend suffered from a disability within the meaning of the ADA.  Pregnancy, without more, is generally not considered to be a "disability" within the meaning of the ADA.  *See Moawad v. RX Place, F.W. Woolworth Co.*, No. 95 CV 5243, 1999 WL 342759, *6 n.3 (E.D.N.Y. May 27, 1999) (citing cases); *see also Serednyj v. Beverly Healthcare LLC*, No. 2:08-CV-4, 2010 WL 1568606, *14 (N.D. Ind. Apr. 16, 2010) (citing cases).  As such, plaintiff can only succeed on his claim if defendant perceived plaintiff's girlfriend as having a disability and fired him because of the alleged distraction that this perceived disability caused.

In addition to actual disability, the ADA defines disability to include being "regarded as" disabled.  *See* 42 U.S.C. § 12102(2)(A)-(C).  The pre-2009 definition of perceived disability includes only those physical or mental impairments that are perceived to substantially limit major life activities.  *See Ragusa v. Malverne Union Free Sch. Dist.*, 381 Fed. Appx. 85, 87 n.2 (2d Cir.2010) (citations omitted).  For "regarded as" claims arising after January 1, 2009, a plaintiff is not required to show a perception that the alleged physical or mental impairment "is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).  However, even in such claims arising after January of 2009, a perceived disability claim may not be based upon an impairment that is "transitory and minor."  Such transitory impairments are defined as those "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).  As such, under this provision, a plaintiff must establish that he had an actual or perceived physical or mental impairment and

12

that he was subjected to an adverse employment action because of his actual or perceived physical or mental impairment.  *See* 42 U.S.C. § 12102(3).

In the present matter, plaintiff has failed to allege that his girlfriend was regarded as having an impairment.  As the EEOC has correctly opined, "[b]ecause pregnancy is not the result of a physiological disorder, it is not an impairment."  EEOCCM § 902.2(c)(3), 2009 WL 4782107 (Nov. 21, 2009) (citations omitted); *see also Spees v. James Marine, Inc.*, 617 F.3d 380, 396-97 (6th Cir. 2010).  Although a plaintiff bringing a claim under the "regarded as" provision of the ADA no longer needs to establish that his employer regarded his "impairment" as substantially limiting a major life activity, the plaintiff must still allege that he suffers from or is regarded as suffering from a physical or mental impairment.  *See* 42 U.S.C. § 12102(3)(A).   "Pregnancy is not, by itself, a physical impairment."  *Serednyj v. Beverly Healthcare LLC*, No. 2:08-CV-4, 2010 WL 1568606, *14 (N.D. Ind. Apr. 16, 2010) (citing cases); *see also Moawad v. RX Place, F.W. Woolworth Co.*, No. 95 CV 5243, 1999 WL 342759, *6 n.3 (E.D.N.Y. May 27, 1999) (citing cases).

Plaintiff's allegations simply claim that defendant believed that he would be distracted and not fully committed to his new job because of his girlfriend's pregnancy.  Plaintiff fails to allege anything beyond a pregnancy without complications or even that defendant believed that his girlfriend suffered from a physical impairment.  *See* Dkt. No. 1 at ¶ 34 (quoting his employer as stating that "'[t]he ***distractions*** you are going to have ***over the next 10 months*** are going to be too much if you're ***constantly being pulled back to Buffalo***'").  *See Mitchell-Miranda v. City of New York*, No. 08 Civ. 4031, 2011 WL 1210202, *7 n.2 (S.D.N.Y. Mar. 24, 2011) (noting that, although under certain rare circumstances pregnancy can be sufficient to establish a disability, generally, a pregnancy without complications is insufficient to establish a protected disability

within the meaning of the ADA) (citations omitted).  The complaint simply does not support a claim that defendant discriminated against plaintiff because it believed that plaintiff's girlfriend had a physical impairment.[1]

At best, plaintiff's complaint alleges that he was discriminated against because his employer thought that he would become "distracted" during his girlfriend's normal pregnancy, not that any perceived "impairment" would distract plaintiff.  Although the alleged conduct is clearly reprehensible, it is simply not within the scope of actions prohibited by the ADA.

Based on the foregoing, the Court finds that plaintiff's complaint fails to set forth an ADA disability discrimination claim.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that defendant's motion to dismiss the complaint is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in defendant's favor and close this case.

**IT IS SO ORDERED.**

Date:  May 20, 2011
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[1] "Impairment" has been defined as "[a] physical or mental defect at the level of a body or organ."  Stedman's Medical Dictionary, "Impairment," 27th ed. (2000). A pregnancy without any complications cannot be said to be a "defect" in any sense of the word; and, therefore, is clearly not an impairment as contemplated by the ADA.